UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TONY RAMIREZ,

          Plaintiff,

    v.

DICK'S SPORTING GOODS, INC.,

          Defendant.

Case No. 26-cv-00260-RS

**ORDER DENYING MOTIONS TO COMPEL, DISMISS/STRIKE, AND STAY THE ACTION**

## I. INTRODUCTION

In this labor law dispute between Dick's Sporting Goods, Inc. ("DSG") and its former employee Tony Ramirez, Defendant DSG moves to compel arbitration, dismiss or strike Plaintiff's class claims pursuant to the alleged agreement to arbitrate, and stay the action pending arbitration. The parties dispute whether DSG waived its right to compel arbitration, whether the agreement is unenforceable due to unconscionability, and whether Plaintiff consented to the agreement. For the reasons set forth below, DSG has not waived its right to compel arbitration nor is the agreement unenforceable due to unconscionability. However, a material factual dispute exists as to the formation of an agreement to arbitrate. Thus, the motion to compel is denied, and, relatedly, the motions to strike/dismiss and to stay are denied as well.

## II. BACKGROUND

DSG is a nationwide sporting goods retailer that employed Plaintiff from approximately November 7, 2024 to May 8, 2025. While working for DSG, Plaintiff acted as an hourly-paid seasonal sale associate.

**A. Plaintiff's Suits Against DSG**

Plaintiff filed a class action against DSG in California state court on May 23, 2025, asserting various violations of California labor law and related causes of action. On July 28, 2025, Plaintiff filed a complaint in a second action asserting a representative claim under the Private Attorneys' General Act of 2004 ("PAGA") on behalf of himself and similarly aggrieved employees based on the same underlying California labor law violations. The Alameda Superior Court consolidated Plaintiff's class and PAGA actions on December 23, 2025, and DSG removed the consolidated action to federal court on January 9, 2026.

The alleged violations comprise various claims under California's Labor and Business and Professions Codes. DSG moves to compel arbitration, dismiss/strike class claims, and stay the action.

**B. Hiring Plaintiff**

The parties dispute how Plaintiff was hired. Supported by a sworn declaration of Brad Cohen, a Senior Manager of HR Technology Strategy, all DSG job applicants must log into or create a Workday account to apply for a position and acknowledge and agree to an electronic, standalone arbitration agreement included at the end of the application workflow on Workday ("Arbitration Agreement"). According to DSG, Plaintiff applied for a job with DSG on November 1, 2024 via the Workday platform and checked a box at the bottom of the arbitration page under the sentence, "[b]y checking this box I acknowledge that I reviewed the Arbitration Agreement and agree to its terms." Dkt. 17-1, Cohen Decl., Ex. F. The Workday platform registered the creation of a Workday account associated with Plaintiff's email on November 1, 2024, *id.*, Ex. D, and acknowledgement and agreement of the Arbitration Agreement via that account four minutes later, *id.*, Ex. F.

By contrast, according to Plaintiff, supported by his own sworn declaration, he was not required to create a Workday account to submit his job application to DSG, and he does not recall seeing an arbitration agreement or being told about one. According to Plaintiff, after submitting an online application and then interviewing in-person, he was hired, and a DSG hiring representative

United States District Court
Northern District of California

CASE NO. 26-cv-00260-RS

2

instructed him to download the Workday app and "log in to an account they had already created for [him]." Dkt. 18-1, Ramirez Decl., ¶ 8. As Plaintiff recounts, this was his first-time using Workday. Plaintiff also swears that it was his "understanding that his Workday account was not private nor… only accessible to [himself] because the username and password were set up by [DSG], not [himself.]" *Id.* at ¶ 11.

### C. Arbitration Agreement

DSG's Arbitration Agreement requires that "all disputes, claims or controversies arising out of, or in any way related to, your application for and/or employment with the [DSG]…be resolved exclusively by final and binding arbitration between the Parties, **and not by way of court or jury trial**. Subject to limited exceptions… this mutual Agreement covers any claims that the Company may have against [the applicant], or that [the applicant] may have against the Company or its past or present principals, shareholders, members, directors, officers, employees, agents, representatives, successors and assigns (all of whom may enforce this Agreement). This Agreement applies to [an applicant] if [the applicant] continue[s] to apply for employment and/or work for the Company after a copy of this Agreement was made available to [the applicant]." Dkt. 17-1, Cohen Decl., ¶ 12; *id.*, Ex. E., § 1 (emphasis in original).

The Arbitration Agreement specifically requires arbitration according to the JAMS Employment Arbitration Rules. *Id.* § 4. It prohibits class actions: "THE PARTIES AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN AN INDIVIDUAL CAPACITY, AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR COLLECTIVE ACTION." *Id.* § 9. The Arbitration Agreement also delegates disputes related to the Agreement to arbitration: "[t]he arbitrator—and not any federal, state, or local court or agency—will have exclusive authority to resolve disputes relating to the validity, applicability, or enforceability of this Agreement" ("Delegation Clause"). *Id*, § 20. Lastly, the Agreement contains a severability clause by which unlawful, invalid, or otherwise unenforceable provisions may be reformed or severed, and the rest of the Agreement enforced ("Severability Clause"). *Id.* § 12.

### D. Filing of the Present Motion

DSG filed the present motion to compel arbitration, dismiss/strike class claims, and stay

action on May 14, 2026, one year after Plaintiff filed the class action complaint and five months after removal to federal court. The parties met and conferred on May 18, 2026, at which time Plaintiff's counsel advised Defendant's counsel that Plaintiff intended to challenge the enforceability of the Arbitration Agreement as well as his lack of consent to arbitration and requested the parties submit the issues to an arbitrator per the Arbitration Agreement's delegation clause. The parties did not reach an agreement. Plaintiff's opposition followed.

### III. WAIVER

"[T]he burden for establishing waiver of an arbitration agreement" is the burden of the party opposing arbitration, and it "is the same as the burden for establishing waiver in any other contractual context." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014–1015 (9th Cir. 2023). Accordingly, to prove waiver, Ramirez must show: "(1) knowledge of an existing right to compel arbitration and (2) intentional acts inconsistent with that existing right." *Id.* at 1015. Neither party disputes that DSG knew of its right to compel arbitration. As to acts inconsistent with that right, Plaintiff points to Defendant's delay in bringing the present motion and refusal to submit the arbitrability issue to the arbitrator.

"Under [Ninth Circuit] precedent, a party generally 'acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court.' " *Id.* (citation omitted). Defendant's delay here is not sufficient for wavier. Defendant delayed only five months after consolidation and removal before bringing the present motion to compel arbitration, and the parties conducted meet and confer efforts regarding arbitration and ADR in the intervening months. Moreover, Plaintiff does not argue DSG "actively litigate[d] the merits" of the case before moving to compel. *See id*; Dkt. 18, Opp., 15–16.

The focus of Plaintiff's argument is that Defendant has acted inconsistently with the right to compel arbitration by bringing this motion in federal court rather than adjudicating the question of arbitrability via an arbitrator, as Plaintiff purportedly requested and as is required, according to Plaintiff, by the Agreement's delegation clause. Defendant, however, claims that "DSG did not refuse to agree to submit the issue of enforceability to an arbitrator" but rather sought clarification

regarding Plaintiff's basis for challenging the Agreement because "certain issues are not delegable to the arbitrator—including formation[.]" Dkt. 19, Reply, at 12. Defendant relies on *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.* for the position that formation could not be heard by an arbitrator. , 21 F.4th 631, 634 (9th Cir. 2021). However, *Ahlstrom* is factually distinct: the plaintiff there was not willing to consent to arbitration of the threshold issues. *See id.* While Defendant's refusal to arbitrate the threshold issues seems inconsistent with its overall effort to compel arbitration, such litigation tactics do not rise to the level of waiver. Accordingly, DSG has not waived its right to compel arbitration.

### IV. UNCONSCIONABILITY

Separate from waiver, Plaintiff argues that the Agreement is unconscionable such that, even if an agreement exists, it still should not be enforced. In California, unconscionability includes an "absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.*" Lhotka v. Geographic Expeditions, Inc.*, 181 Cal. App. 4th 816, 821(Cal. Ct. App. 2010) (citation omitted). Accordingly, unconscionability has both a "procedural" and a "substantive" element. *Id.* " '[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required…and vice versa.' " *Poublon v. C. H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal.4th 899, 910, (2015)). Contracts of adhesion necessarily indicate "some degree of procedural unconscionability." *Id.*

Here, the Arbitration Agreement is a contract of adhesion because it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *See Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 109 (2011). Per Defendant's own telling, an applicant must agree to arbitration or forego applying for any position with DSG, a national retailer. Plaintiff also notes that the Agreement does not include a description of the JAMS rules with which a party to the Agreement must comply. This reflects an element of surprise, albeit minimal. *See Carbajal v. CWPSC, Inc.*, 245 Cal.App.4th 227 (2016).

On the other hand, the Arbitration Agreement is featured prominently. In order to proceed with a job application, an applicant must scroll past warnings about the Agreement and a copy of

United States District Court
Northern District of California

the Agreement and check a box acknowledging and agreeing to it. Just before the box that must be checked to proceed, is the warning:

> "YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND REVIEWED THIS AGREEMENT AND THAT BY SIGNING BELOW, ELECTRONICALLY SIGNING THE AGREEMENT, OR ELECTRONICALLY ACCEPTING/AGREEING TO THIS AGREEMENT, YOU ARE AGREEING TO ARBITRATE COVERED DISPUTES UNDER THE TERMS OF THIS AGREEMENT, WHICH BINDS BOTH YOU AND THE COMPANY."

Dkt. 17-1, Cohen Decl., Ex. C. Next to the box that must be checked, reads another warning, "By checking this box I acknowledge that I reviewed the Arbitration Agreement and agree to its terms." *Id*. The Agreement in its entirety is available to scroll through on the application page as well as available in a standalone document via hyperlink, and there is no time limit for reviewing and accepting the Agreement. In sum, although there is a degree of procedural unconscionability, in light of the limited evidence of oppression and surprise, it is minimal. *See Poublon v. C.H. Robinson Company*, 846 F.3d 1251, 1270-71 (9th Cir. 2017) (citing *Serpa v. Cal. Surety Investigations, Inc.*, 215 215 Cal. App. 4th 695, 704 (2013)).

Since "the degree of procedural unconscionability of an adhesion agreement" without other indicia of unfairness "is low… the [A]greement will be enforceable unless the degree of substantive unconscionability is high." *See id.* "A contract is substantively unconscionable when it is unjustifiably one-sided to such an extent that it shocks the conscience." *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 923 (9th Cir. 2013). "Although California courts have characterized substantive unconscionability in various ways, [they] all… point to the central idea that unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Tompkins* v. *23andMe, Inc*., 840 F.3d 1016, 1023 (9th Cir. 2016) (citations and internal quotations omitted).

Plaintiff relies heavily on a 2024 decision by the California Court of Appeal, *Cook v. Univ. of S. California*. 102 Cal.App.5th 312, 326 (2024), *reh'g denied* (June 13, 2024). There, the Court of Appeal found that the at-issue arbitration agreement was a contract of adhesion with sufficient substantive unconscionability to be unenforceable for three reasons. The contract was (1) too broad in scope, expressly applying to " 'all claims, whether or not arising out of… employment, remuneration or termination,' " *id.* at 323 (quoting the agreement); (2) lacked mutuality, *see id.* at

347–48; and (3) survived indefinitely following the plaintiff's termination, *see id.* at 347.

As to the first, the Agreement includes inconsistent language about its scope. The first section of the Agreement defines "Covered Disputes" as those "arising out of, or in any way related to, your application for and/or employment with the Company—including but not limited to the interview process, background check, employment relationship, or the termination of that relationship (collectively, 'Covered Disputes')[.]" Dkt. 17-1, Cohen Decl., Ex. E § 1. Yet, in the section immediately following, the Agreement reads, "[e]xcept as otherwise provided in this Agreement, Covered Disputes subject to arbitration include, but are not limited to, all past, present and future claims for…," and then includes a long list of employment and nonemployment-related claims such as, claims for "personal, physical or emotional injury or distress"; "fraud, misrepresentation, defamation, and any other tort or common law claims"; "and violation of any other federal, state or local public policy, constitution, statute, ordinance or regulation." *Id.* § 2. Alone, this latter language suggests an impermissibly broad scope. However, unlike *Cook*, there is no express language including claims "whether or not" they arise out of employment. *See Cook*, 102 Cal.App.5th at 346. Additionally, unlike the defendant in *Cook*, Defendant here argues that the Agreement is limited to claims relating to an applicant's candidacy or employment. *See id.* at 344 n.1. In sum, in light of the language in the first section of the Agreement which defines "Covered Disputes" and the limiting language in the second section (i.e., "except as otherwise provided in this Agreement"), *see* Dkt. 17-1, Cohen Decl., Ex. E, §§ 1, 2, the Agreement's scope reads as limited to claims related to employment, and thus does not amount to an unconscionable bargain.

As for the second two *Cook* factors, lack of mutuality and unreasonable duration, the case here is closer to that in *Cook*. DSG must arbitrate covered claims brought against the applicant whereas an applicant/employee must arbitrate any claims brought against DSG *as well as* "its past or present principals, shareholders, members, directors, officers, employees, agents, representatives, successors and assigns (all of whom may enforce this Agreement)." *Id.* § 1. The Agreement also "will survive the termination of [the applicant's] employment and the expiration of any benefit." *Id.* § 14. Despite the lack of mutuality and open-ended duration, the *Cook* factors alone do not render the Agreement unenforceable. Scope is perhaps the biggest source of

unconscionability in *Cook* because it exacerbates the other two factors: an employee lacks mutuality, for all time, for *all* claims. The Agreement here is readily distinguishable because the scope is, in fact, limited to those related to employment.

Plaintiff discusses two other, non-*Cook* sources of substantive unconscionability. First, Plaintiff argues the Agreement is unconscionable because of a lack of guaranteed discovery. However, as Defendant points out, the JAMS Rules provide for reasonable discovery and the Agreement gives the arbitrator "the authority to order such discovery as he or she considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." Dkt. 17-1, Cohen Decl., Ex. E, § 8. Second, Plaintiff argues the Agreement is unconscionable because it does not permit "any non-individual representative claims"—those "must be dismissed"— nor does it allow any arbitration decision or award to have preclusive effect in any dispute with a third party." *Id.* §§ 8, 10. According to Plaintiff, the effect is wholesale waiver of representative PAGA claims. While likely unconscionable, it does not taint the rest of the Agreement.

To the extent the language regarding non-individual representative claims, mutuality, and duration reflect unconscionability, the provisions may be severed, and the Agreement may otherwise be enforced pursuant to the Severability Clause. Unlike in *Cook*, where scope "tainted" the entire agreement with unconscionability, the unconscionable language here reflects discrete, severable provisions. *See Cook*, 102 Cal.App.5th at 329 (Severability was not possible because the scope tainted the agreement.); *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 662 (2022) (Despite a similar PAGA waiver, Defendant "was entitled to enforce the agreement insofar as it mandated arbitration of [plaintiff]'s individual PAGA claim," reversing the lower courts which had "refused to do so" erroneously "based on the rule," which the Court found preempted, "that PAGA actions cannot be divided into individual and non-individual claims.").

For the foregoing reasons, the Agreement does not have a sufficient amount of substantive unconscionability to render it unenforceable. Accordingly, the question of formation must be reached.

## V. FORMATION

Under the Federal Arbitration Act ("FAA"), a district court's role is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted). Under California law, a valid contract exists when (1) the parties are capable of contracting, (2) there was mutual consent, (3) the contract had a lawful object, and (4) the contract was supported by sufficient cause or consideration. Cal. Civ. Code § 1550. The party seeking to compel arbitration "has the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

Plaintiff here argues he did not consent to the Arbitration Agreement. Under the California Uniform Electronic Transactions Act ("CUETA"), "[a]n electronic record or electronic signature is attributable to a person if it was the act of the person[,]" which " may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Civ. Code § 1633.9(a). Defendant argues it has shown that DSG's database record of consent to the Arbitration Agreement is attributable to Plaintiff. Defendant relies on the declaration of Brad Cohen, Senior Manager of HR Technology Strategy, stating that (1) "[a]pplicants cannot apply" to a DSG position "unless they are logged into their own unique [Workday] account," Dkt. 17-1, Cohen Decl., ¶ 6; (2) applicants "cannot proceed further until they affirmatively acknowledge receiving and agreeing to the terms of the Arbitration Agreement[,]" *id.* ¶ 9; (3) "Plaintiff completed th[is] same process.. and could not have applied for a position without creating a Workday account and completing the Arbitration Agreement[,]" *id.* ¶ 11; and (4) "[a]ccording to DSG's HRIS system records, Plaintiff used his email address, Mr.tonyramirez2023@yahoo.com as his username, and a unique password that Plaintiff created, to create a Workday account and apply for a position at DSG" and "electronically sign and acknowledge the Arbitration Agreement[,]" *id.* ¶¶ 11, 13.

Often, uncontradicted declarations that an electronic signature could have been placed only by someone using plaintiff's unique username and password are enough to authenticate an electronic record of assent under CUETA. *See e.g., Pliszka v. Axos Bank*, No. 24-CV-445-RSH-SBC, 2024 WL 4194338, at *4 (S.D. Cal. Sept. 13, 2024), *appeal dismissed*, No. 24-6273, 2025

WL 3754350 (9th Cir. Dec. 29, 2025); *Mejia v. Dick's Sporting Goods, Inc.*, No. 2:25-CV-11645-JFW-MAAX, 2026 WL 796910, at *3 (C.D. Cal. Mar. 18, 2026); *Stover-Davis v. Aetna Life Ins. Co.*, No. 1:15-CV-1938-BAM, 2016 WL 2756848, at *4 (E.D. Cal. May 12, 2016). However, Plaintiff has provided a sworn declaration that contradicts Cohen's. Ramirez declares (1) he "did not create a Workday account… to submit [his] application" but rather applied by clicking on a link on a social media post advertising the position and filling out the form he was transferred to with his personal information in late October 2024, prior to DSG's database records, Dkt. 18-1, Ramirez Decl., ¶¶ 3, 6; (2) before being hired, he "did not access, log in to, or use any Workday account[,]" *id.* ¶ 7; and (3) the hiring representative "provided [him] with the username and password" for a Workday account that DSG "had already created for [him,]" *id.* ¶ 8. A password which Plaintiff also swears he repeatedly forgot until being told, months later, to change it to something he would remember. *Id.* By this declaration, Plaintiff has created a factual dispute as to whether he or someone else created his Workday account and took the steps indicating assent to the Arbitration Agreement.[1]

### VI. CONCLUSION

In light of the material factual dispute regarding consent, Defendant has not met its burden to show by a preponderance of the evidence the existence of an agreement to arbitrate. *See Johnson*, 57 F.4th at 681. Defendant's motion to compel is denied. The motions to dismiss/strike and to stay pending arbitration are similarly denied.

Having reached the issue of consent and agreeing with Plaintiff as to the existence of a

---

[1] Defendant has filed a supplemental declaration indicating that someone else cannot set up an account for another person without having access to their email because account set-up requires clicking a link sent to the email associated with the account. Dkt. 19-1, Cohen Supp. Decl. ¶ 5. However, this is insufficient to resolve the factual dispute created by Ramirez's declaration. He may have clicked the link and yet not created his own account. Moreover, we do not know when in the account creation flow, especially relative to assenting to the Agreement, verification comes. *Compare id.*, *with Espejo v. S. California Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1062, 201 Cal. Rptr. 3d 318, 329 (2016) (Supplemental declaration "detail[ing] [defendant's] security precautions" and specific applicants steps to show signature could not have been placed by someone without the plaintiff's unique username and password was sufficient to rebut plaintiff's declaration that he did not remember signing the agreement.). Defendant even seems unconvinced of its own argument, failing to discuss verification entirely in the Reply, *see* Dkt. 19, Reply, at 3 (only mention of Cohen Supp. Decl.), or at the hearing held on June 18, 2026.

material factual dispute, Plaintiff's request under Section 4 of the FAA for a jury trial is relevant. *See* 9 U.S.C. § 4. Plaintiff requests a trial as to consent so that a jury can review the evidence, hear the testimony of Plaintiff, Mr. Cohen (Defendant's Senior Manger HR Technology Strategy), Betsy Cruz (the hiring representative Plaintiff alleges provided Plaintiff with his username and password), and Armen Harutyunyan (Plaintiff's manager who Plaintiff alleges knew his username and password). The parties are ordered to meet and confer and submit a joint statement by July 10, 2026 with regards to whether they consent to an evidentiary hearing, in lieu of a jury trial, to resolve the dispute.

**IT IS SO ORDERED**.

Dated: June 23, 2026

_____
RICHARD SEEBORG
Chief United States District Judge

United States District Court
Northern District of California